[No. 23124.   Department One.   July 25, 1931.]

L. P. DUDLEY *et al., Respondents,* v. W. B. LOWRIE
*et al., Appellants,* EDWARD DOLAN *et al.,*
*Defendants.*[1]

*John C. Hogan,* for appellants.

*W. H. Abel* and *T. H. McKay,* for respondents.

[1]Reported in 1 P. (2d) 854.

MITCHELL, J.—This appeal results from a controversy over the rents from the Bijou Theater in Aberdeen, plaintiffs demanding an accounting and a judgment for one-half of the rents collected by and on behalf of the Demeree estate and C. M. Demeree, Trustee, from December 1, 1928. Judgment was entered in favor of the plaintiffs for such one-half of the rents from the date mentioned down to February 1, 1931, the date of the trial. W. B. Lowrie and Palmer C. Demeree, personally and as executors of the estate of Louise M. Demeree, deceased, and C. M. Demeree have appealed.

In the year 1909, L. P. Dudley and wife and J. A. Mapes and wife owned the west half (25 feet) of lot 4, block 47, Benn's Plat of Aberdeen, and have owned it at all times since, except that, shortly before the commencement of this action, J. A. Mapes died, since which time the interest of himself and wife has been owned and controlled by Hattie E. Mapes, personally and as executrix of his estate. In the same year, 1909, Louise M. Demeree, a widow, owned the east half of the lot, which she continued to own until her death on December 13, 1927, since which time it has been owned by the appellants.

The lot fronts on Heron street and runs back some one hundred and thirty feet. In 1909, the owners of the lot erected a one-story building on it, consisting principally of a theater, but having also two small shop rooms on each side of the entrance to the theater and running back forty or fifty feet from Heron street. The line dividing the east and west halves of the property falls in the center of the entrance way from Heron street into the theater and thence through the center of the theater. Each party, according to ownership, paid one-half of the total cost of the building, including the heating plant located on the west half. The

owner or owners of each half of the lot were entitled to let and have all rents from the two small shop rooms on his half of the property, but the theater, which was the principal part and purpose of the whole enterprise, was to be let by the owners jointly as lessors, which plan was followed until the expiration of a written lease for a term ending October 1, 1926, the tenant at all such times paying one-half of the rent to each of the parties, as owners.

Other facts, according to the findings made by the trial court, are as follows:

"Second: That the court further finds that in the year 1909 the Bijou Theater Building was built upon Lot 4, Block 47, in Benn's Plat of the City of Aberdeen, Grays Harbor County, Washington, the east half of which lot was owned by Louise M. Demeree, deceased, and the west half of said lot was owned by L. P. Dudley and Elizabeth B. Dudley, his wife, and J. A. Mapes and Hattie E. Mapes, his wife, as a joint adventure of the parties to be used as a theater building for theater purposes, one-half of said building being on the east half of said lot and one-half on the west side of said lot. That the original cost of construction and of subsequent maintenance of the building was borne equally by the parties, viz., one-half thereof by Louise M. Demeree and one-half thereof by L. P. Dudley and Elizabeth B. Dudley, his wife, and J. A. Mapes and Hattie E. Mapes, his wife; that the building was constructed and maintained under an agreement between Louise M. Demeree on the one part and L. P. Dudley and Elizabeth B. Dudley, his wife, and J. A. Mapes and Hattie E. Mapes, his wife, on the other part, that they would at all times jointly lease said theater building and apportion the rentals, one-half to Louise M. Demeree, and one-half to L. P. Dudley and J. A. Mapes, and under said agreement the construction, maintenance, use, occupation and rental of said Bijou Theater building was a joint adventure of the parties; that said building was and is incapable of several or distinct use and occupation.

"Third: May 17th, 1926, without the knowledge of plaintiffs and in violation of the agreement of joint adventure, Louise M. Demeree made a lease for six years at $162.50 per month to D & R Theater Co., a corporation, to commence October 1, 1926, on the east one-half of said Bijou Theater Building, and said lease was executed secretly and without the knowledge of the plaintiffs or J. A. Mapes, and without affording plaintiffs or said J. A. Mapes an opportunity to join in said lease. That the necessary effect of said lease was to render incapable of use the west half of said theater building and to deprive plaintiffs of any income therefrom.

"Fourth: The defendants, W. B. Lowrie and Palmer C. Demeree, as executors of the estate of Louise M. Demeree, deceased, have collected rents upon the Bijou Theater Building at the rate of $162.50 per month for the period commencing December 1st, 1928, up to and including January 1st, 1931, a total of twenty-six months, no part of which has been received by plaintiffs, and during said time plaintiffs have received no income from said theater building, and that the plaintiffs are legally and equitably entitled to one-half of that certain lease made May 17th, 1926, by Louise M. Demeree, to D & R Theater Co., a corporation, which monthly rental is the sum of $162.50."

In the statement in the "second" finding of the trial court to the effect that the parties would jointly lease the theater building and divide the rentals equally, the word "building" was manifestly used inadvertently and should have been omitted.

While the lease made by the appellants in May, 1926, for a six-year term commencing October 1 of that year was made without the knowledge or consent of the respondents, the respondents, without any further contract obligation, received from the tenant after October 1 the same amount of rental they had been receiving down until December 1, 1928, at which time the tenant refused to make further payment to them, and

from which date it will be noticed they are allowed recovery against the appellants.

Respondents testified, and were satisfactorily corroborated, that, after the date of the lease by the appellants, respondents had several bona fide applications from persons who wanted to rent the theater, which, of course, the respondents were unable to do on account of the outstanding lease appellants had made of one-half of the theater.

Notwithstanding appellants' contention to the contrary, the foregoing facts are, in our opinion, supported by a preponderance of the evidence, although in material respects the evidence was conflicting.

Appellants further contend that, if there was such an agreement, it was in parol, and therefore void under the statute of frauds relating to real estate. They cite and rely on Rem. Comp. Stat., § 10550, and Laws of 1929, chapter 33, p. 31, § 1, both statutes being similar, the latter providing:

"That every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed."

In this connection they cite, upon the subject of easements, such authorities as 9 R. C. L., p. 735, § 2, and p. 746, § 15, defining an easement and saying, correctly, that it is an interest in land and within the statute; and further cite cases such as *Rhoades v. Barnes,* 54 Wash. 145, 102 Pac. 884, upon the subject of parol license to be exercised on the land of another. But these authorities are not in point. An easement, as defined in the authority cited is

" . . . a liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil. It is a right which one person has to use the land of another for a specific purpose."

6

There is no claim of that kind here. Respondents are not contending that they have the right to use the lands of the appellants for any purpose whatever. As to the other argument, it is true that the case of *Rhoades v. Barnes,* 54 Wash. 145, 102 Pac. 884, holds that a parol license to be exercised on the land of another creates an interest in the land and is within the statute of frauds, but neither the complaint nor the judgment in this case indicates or suggests that the respondents or either of them claim or attempt to assert any license to be exercised on the land of the appellants.

The respondents do not contend that the appellants' lease for one-half of the theater is invalid, although it is perfectly plain that the tenant was well aware, at the time he entered into it, of the arrangements by which the owners had acted together as lessors during prior years, and that no change had taken place in their agreement or understanding with respect to that plan.

There is convincing proof in this case that the tenant of the appellants, having large, if not almost complete, control of the show business in the city, desired and procured this lease only for the purpose of stifling competition, knowing, of course, that a lease from the owners of one-half would as effectively accomplish that purpose as a lease of all of the theater. Certainly, it had the effect, in the very nature of the situation, as well as under the proof, of depriving the respondents of any chance to realize separately on their half of the theater, either by occupancy of it or the leasing of it for any purpose to which it was or could reasonably be made suitable.

The situation appears to be without difficulty of determination, considered with respect to the manifest intention and purpose of the parties. It is a case in

which the parties, in furtherance of a joint undertaking, pooled or contributed property and the expense of the improvement of it, not to give or create, each to or in the other, any interest in or encumbrances upon his real property, but to produce an income for the joint benefit of the respective parties. The appellants, having voluntarily, and without the consent of the respondents, entered into a lease of their half of the theater, the validity of which is not questioned, thus depriving the respondents of all opportunity to use their own property for the benefit of the common fund or income, or at all, are held and bound to pay to respondents their respective share, or one-half, of the rents received by the appellants. There is no contention that the judgment appealed from differs from this conclusion so far as the amount of it is concerned.

Affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and MILLARD, JJ., concur.